# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

FILED
APR 07 2006
Phil Lombardi, Clerk
U.S. DISTRICT COURT

1. COMMUNITYCARE HMO, INC., )
)
PLAINTIFF, )
)
VS. )
)
2. MEMBERHEALTH, INC. )
3. COMMUNITY CARE RX, LLC, AND )
4. NATIONAL COMMUNITY PHARMACISTS )
ASSOCIATION, )
)
DEFENDANTS. )

CASE NO.

06CV 197 TCK-SAJ

## VERIFIED COMPLAINT

Plaintiff, CommunityCare of Oklahoma HMO, Inc. ("CommunityCare") states as follows for its claims against Defendants, MemberHealth, Inc. ("MemberHealth"), Community Care Rx, LLC ("Community Care Rx"), and National Community Pharmacists Association ("NCPA") (collectively, "Defendants"):

## PARTIES

1. CommunityCare is a corporation organized under the laws of Oklahoma, with its principal place of business at 218 W. 6th Street in Tulsa, Oklahoma.

2. MemberHeath is a corporation organized under the laws of Ohio, with its principal place of business at 29100 Aurora Road, Suite 301, in Solon, Ohio.

3. NCPA is a corporation organized under the laws of Virginia, with its principal place of business at 100 Daingerfield Road in Alexandria, Virginia. NCPA is the parent company of Community Care Rx.

4. Community Care Rx is a limited liability company organized under the laws of Delaware, with its principal place of business at 100 Daingerfield Road in Alexandria, Virginia. Community Care Rx is a wholly-owned subsidiary of NCPA.

**JURISDICTION AND VENUE**

5. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. When CommunityCare filed a similar, related action against MemberHealth in Tulsa County District Court in November 2005, MemberHealth removed the action to this Court, alleging, *inter alia*, that the value of its trademark (the use of which within Oklahoma CommunityCare challenged in that action and also challenges in this action) and the costs to MemberHealth associated with the relief sought by CommunityCare exceeded $75,000.

6. The Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), because this case arises under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051 *et seq.* (the Lanham Act).

7. The Court has jurisdiction over the state-law claims herein pursuant to 28 U.S.C. § 1338(b), because these claims are joined with substantial and related claims under the trademark laws of the United States, 15 U.S.C. §§ 1051 *et seq.*, and/or pursuant to the Court's supplemental jurisdiction, 28 U.S.C. § 1367(a).

8. Venue of this action is proper in this District pursuant to 28 U.S.C. § 1391.

## BACKGROUND ALLEGATIONS

9. CommunityCare is a Tulsa-based business that has offered managed health plans to Oklahomans since 1993. It has offered Medicare replacement coverage to Medicare beneficiaries in Oklahoma since 1998.

10. From 1993 to the present, CommunityCare has continuously used the name and trademark "CommunityCare" in connection with its products and services in the insurance market in Oklahoma. CommunityCare has developed a strong and widely respected reputation in Oklahoma for good insurance products and good service.

11. As a result of its continuous use of "CommunityCare," CommunityCare owns and enjoys common-law trademark rights in the name "CommunityCare." "CommunityCare" has been actively and extensively promoted by CommunityCare in connection with its products and services. "CommunityCare" has become known to and recognized by the public as designating CommunityCare's products and services. There is substantial goodwill associated with the mark "CommunityCare" throughout Oklahoma.

12. A centerpiece of CommunityCare's business is its Senior Health Plan, which offers Medicare replacement coverage to Medicare beneficiaries living in Oklahoma. Senior Health Plan provides Medicare Part C (*i.e.*, hospital and medical) and Part D (prescription drug) coverage. Effective January 1, 2006, any individual who was a Senior Health Plan member before the start of the year and who did not disenroll from the plan, but remained a member of CommunityCare's Senior Health Plan, automatically received coverage for outpatient prescription drugs under the new Medicare Part D, which is in addition Senior Health Plan's other Medicare Part C benefits.

13. If, however, an existing CommunityCare Senior Health Plan member enrolls in another entity's Medicare Part D plan, Medicare regulations require the Government to automatically disenroll the individual from CommunityCare's Senior Health Plan, and that individual will lose the Part C hospital and medical coverage that the enrollee enjoyed under the Senior Health Plan and be enrolled into traditional Medicare Parts A and B.

14. MemberHealth collaborated with NCPA and its wholly-owned subsidiary, Community Care Rx, to market a Medicare Part D plan to Medicare beneficiaries. Defendants adopted the name "Community Care Rx" as the name under which they market their Medicare standalone Part D plan. Unlike CommunityCare's Senior Health Plan, Community Care Rx only offers Part D benefits; it does not offer medical or hospital benefits covered by Medicare Parts A, B or C. NCPA has applied to the Patent and Trademark Office for federal registration of the mark, "Community Care Rx."

15. As of October 15, 2005, Defendants began marketing their Medicare Part D plan to Oklahomans under the name "Community Care Rx." Defendants engaged in this marketing by a variety of means, including telemarketing, personal interviews, printed literature, and Defendants' Internet website (www.CommunityCareRx.com).

16. Among Oklahomans who have been solicited by Defendants to purchase their Medicare standalone Part D plan are CommunityCare's current members, including those who already participate in CommunityCare's Senior Health Plan.

17. Defendants' use of the "Community Care Rx" name in Oklahoma has been deceptive and has caused confusion in the marketplace with the "CommunityCare" mark. A number of CommunityCare's members who received solicitations from Defendants were

confused into believing that Community Care Rx and CommunityCare are the same entity or are related entities.

18. Regulators at Oklahoma's Department of Insurance were confused into believing that Community Care Rx and CommunityCare are the same entity or are related entities.

19. CommunityCare's business partner, Blue Cross and Blue Shield of Oklahoma, was confused into believing that Community Care Rx was CommunityCare's standalone Part D plan that would compete with the partners' Medicare Advantage Local PPO product, MedicareBlue PPO.

20. The publisher of the Tulsa-based magazine for senior citizens, *The Vintage Newsmagazine*, was confused into believing that Community Care Rx and CommunityCare are the same entity or are related entities.

21. Because of the widespread actual and likely confusion among Oklahomans engendered by Defendants' use of the "Community Care Rx" name in this State, CommunityCare on November 4, 2005 filed a Verified Petition against MemberHealth in the Tulsa County District Court, alleging trademark infringement and unfair competition under the common law, and deceptive trade practices and passing off under the common law and 78 Okla. Stat. §§ 51 *et seq.* On November 7, 2005, CommunityCare filed in the same Court an application for a temporary restraining order and a temporary injunction, accompanied by a supporting brief. On November 8, 2005, MemberHealth removed the action to this Court.

22. On November 17, 2005, only hours before the Court's scheduled hearing on CommunityCare's application for equitable relief, CommunityCare and MemberHealth entered into a settlement agreement (hereafter, the "Agreement"), by which CommunityCare agreed to dismiss the above-described action in exchange for MemberHealth's promises, *inter alia*, (1)

immediately to instruct Defendants' enrollers to inquire of potential Oklahoma enrollees concerning their current health insurance plan and, upon learning that they are enrolled in one of CommunityCare's plans, to take steps to prevent confusion between CommunityCare and Defendants and to safeguard against enrollees unwittingly losing their existing plan benefits that they have with CommunityCare; (2) promptly to request approval from the Center for Medicare and Medicaid Services (hereafter, "CMS") to modify Defendants' Oklahoma marketing materials to prevent confusion with CommunityCare's products and services, and to implement the revised marketing materials within 30 business days after approval; (3) within 30 business days after CMS approval, to change the name of Defendants' Oklahoma Medicare Part D "Community Care Rx" plan to "Community Pharmacists Care Rx," in order to avoid further confusion with CommunityCare and its mark; and (4) to "take such action as may be necessary to avoid confusion between [Defendants] and [CommunityCare]." A copy of the Agreement is appended on Exhibit A.

23. In early December 2005, CMS approved Defendants' request to modify their Oklahoma marketing materials to carry the name "Community Pharmacists Care Rx" in place of "Community Care Rx." Pursuant to the Agreement, no later than 30 business days after CMS approval of the name change, Defendants were required, *inter alia*, to use the name "Community Pharmacists Care Rx" on all Medicare Part D marketing materials used in connection with Oklahoma consumers.

24. MemberHealth's failures to perform its promises under the Agreement, and Defendants' continued use of the name "Community Care Rx" in Oklahoma, have created an ongoing likelihood of confusion among Oklahomans and have resulted in several instances of

known, actual confusion among Oklahomans. Defendants' unlawful conduct includes, but is not limited to, the following:

A. On at least two occasions on or about November 29, 2005, compliance calls were made to Community Care Rx seeking information about its Medicare D plan. The callers stated that they were currently enrolled in CommunityCare's Senior Health Plan. In both instances, Defendants' enrollers, contrary to MemberHealth's undertakings in the Agreement, failed to provide the callers with information which would have prevented the callers, had they been actual enrollees, from losing their Senior Health Plan coverage.

B. On or about December 2, 2005, a Medicare beneficiary in Tulsa who had previously contacted CommunityCare with the intention of joining CommunityCare's Senior Health Plan attended, along with 15 other individuals, an enrollment seminar at his apartment complex conducted by a representative of Defendants. Although the Medicare beneficiary made several comments to Defendants' representative that indicated that he believed that the representative was associated with CommunityCare's Senior Health Plan, the representative enrolled him in Community Care Rx's Medicare D plan anyway. During a subsequent informational call from CommunityCare, the beneficiary realized that he had not been signed up with Senior Health Plan, but with Community Care Rx, became very upset, and stated that he believed that Defendants' representative had misrepresented himself.

C. In December 2005, two members of CommunityCare's Senior Health Plan visited an Oklahoma pharmacy where individuals whom they believed to be affiliated with CommunityCare were taking applications for enrollment in a Medicare Part D plan.

The two senior citizens unwittingly enrolled in Defendants' Medicare Part D Plan, only to learn later that they had automatically been disenrolled from CommunityCare's Senior Health Plan. On February 6, 2006, the two senior citizens wrote to CommunityCare describing their confusion and asking to be reinstated in Senior Health Plan.

D. As of late January 2006, after Defendants had purportedly discontinued use of the "Community Care Rx" name in Oklahoma (as required by the Agreement), new member enrollment packets sent by Defendants to Oklahomans contained return envelopes that continued to bear the "Community Care Rx" name.

E. On or about January 20, 2006, one of Defendants' representatives phoned a member of CommunityCare's Senior Health Plan and, as the member explained in a letter to CommunityCare, gave her the impression that she was speaking with a representative of CommunityCare. The member stated to CommunityCare that she had made a "mistake" in enrolling in Defendants' Medicare D plan, did "not want CCRx," and requested reinstatement in CommunityCare's Senior Health Plan.

F. As of at least mid-February 2006, several of Defendants' affiliated pharmacies in the Tulsa area were continuing to display and to distribute marketing materials bearing the "Community Care Rx" name, including large banners and advertising brochures.

25. Defendants have continued to mail to Oklahoma senior citizens new member enrollment packets containing materials—including a basic formulary booklet and membership card—that bear the "Community Care Rx" name. Other materials contained in these packets confusingly bear both the "Community Pharmacists Care Rx" and the "Community Care Rx" names. Oklahomans receiving these materials are likely to be confused into believing that the

materials were sent to them by CommunityCare, and will not be able to tell that Defendants and CommunityCare are separate sources of health insurance products and services.

26. Defendants' brochures distributed in Oklahoma continue to include Defendants' Internet domain name—www.CommunityCareRx.com—without explaining that the domain name is not associated with CommunityCare or its products and services.

27. Defendants' website, which is accessed through the domain name "www.CommunityCareRx.com," prominently and repeatedly displays the name "Community Care Rx" and does not indicate to consumers arriving at the site that Defendant and CommunityCare are separate sources of health insurance products and services. Several of the clickable options available on this website also fail to inform consumers that Defendants' name in Oklahoma is "Community Pharmacists Care Rx" or that "Community Care Rx" does not refer to CommunityCare.

28. In addition, if a consumer uses an Internet search engine such as Google to search the term "Community Pharmacists Care Rx" (the name Defendants' agreed to use) nothing is returned. However, searching for "CommunityCare Rx" (Plaintiff's name) returns the Defendants' website.

29. Senior citizens, for whom security and clarity in health insurance and drug coverage are especially important, are particularly vulnerable to the marketplace confusion that has been created in Oklahoma by Defendants and that has continued here even after MemberHealth executed the Agreement. This vulnerability is compounded by the confusion that already exists for senior citizens as a result of the widely-reported problems resulting from the federal government's controversial implementation of Medicare Part D.

30. May 15, 2006 is the last day on which senior citizens can change from one type of Medicare drug coverage plan to another (e.g., from a standalone Part D plan, like Community Care Rx, to one, like CommunityCare's Senior Health Plan, that offers both medical and prescription drug benefits) until January 1, 2007. Should the confusion of Oklahoma senior citizens concerning CommunityCare and Defendants continue through May 15, 2006, those individuals will remain disenrolled from their hospital and medical coverage under CommunityCare's Senior Health Plan for more than seven months, if not longer.

31. Adding to the dangers for confused Oklahoma senior citizens is the fact that there is a limit on the number of times that covered individuals may change drug coverage plans. Given these constraints, a member of CommunityCare's Senior Health Plan could remain locked into a mistaken choice of drug coverage plans, and therefore be disenrolled in the Senior Health Plan, for an indefinite period of time.

**CLAIMS FOR RELIEF**

32. Each and every paragraph of this Complaint is incorporated in every claim for relief.

**FIRST CLAIM FOR RELIEF**

**Trademark Infringement Under the Common Law**

33. By virtue of its continuous use of the name and trademark "CommunityCare" in connection with its products and services in the insurance market in Oklahoma, CommunityCare owns and enjoys common-law trademark rights to the mark "CommunityCare." Such rights are superior to any rights which Defendants may claim in and to the name "Community Care Rx" with respect to marketing insurance products and services in Oklahoma.

34. Defendants' use of "Community Care Rx" in connection with the marketing of its insurance products and services in Oklahoma is likely to cause and has caused confusion as to

the source of those products and services. Those who are solicited by Defendants will be likely to associate or already have associated such products and services with, and as emanating from, CommunityCare, all to CommunityCare's detriment.

35. Defendants' use of the name "Community Care Rx" infringes CommunityCare's rights in its "CommunityCare" mark, dilutes the distinctive qualities of that mark, injures CommunityCare's business reputation, and results in unfair competition, all in violation of the common law of Oklahoma. The natural, probable, and foreseeable result of Defendants' wrongful conduct has been and will continue to be to deprive CommunityCare of goodwill, and to injure CommunityCare's relations with present and prospective customers and business partners, for which CommunityCare is entitled to temporary and permanent injunctive relief, and to recover damages, including Defendants' profits, CommunityCare's costs, and reasonable attorney's fees.

36. CommunityCare has sustained and will continue to sustain damage as a result of Defendants' wrongful conduct. Upon information and belief, Defendants' conduct has also deprived and will continue to deprive CommunityCare of business opportunities and opportunities for expanding its goodwill.

37. Unless enjoined by this Court, Defendants intend to continue their course of conduct of wrongfully using, infringing, and otherwise profiting from CommunityCare's mark. As a direct and proximate result of the acts of Defendants alleged above, CommunityCare has already suffered irreparable damage and will sustain lost profits. CommunityCare has no adequate remedy at law to redress all of the injuries that Defendants have caused and intend to cause by their conduct. CommunityCare will continue to suffer irreparable harm and sustain lost profits until Defendants' actions alleged above are enjoined by this Court.

## SECOND CLAIM FOR RELIEF

**False Designation of Origin**
**(15 U.S.C. § 1125(a))**

38. Defendants have caused their products and services to enter into commerce in Oklahoma under the false designation and representation of the term or name "Community Care Rx." Defendants' use of the term or name "Community Care Rx" in connection with their standalone Medicare Part D plan is without leave or license from CommunityCare.

39. Defendants' actions are in violation of 15 U.S.C. § 1125(a) because Defendants have used, in connection with products and services, a confusing and deceptive term or name, a false designation of origin and false description or representation of fact, including words tending falsely to describe or represent the same, and have caused such products and services to enter into commerce in Oklahoma. CommunityCare has been and is likely to be damaged by such deceptive term or name and false description or representation because of the likelihood that consumers will be confused and deceived as to the true source, sponsorship, or approval of Defendants' products and services, or as to the lack of connection, association, or affiliation between Defendants and CommunityCare.

40. CommunityCare's "CommunityCare" mark has acquired a secondary meaning in the market for health insurance and drug coverage products, thus indicating a single source—namely, CommunityCare—for products and services offered by CommunityCare or under its authority.

41. Defendants have offered for sale and/or sold products and services similar to those originally offered by CommunityCare or under the authority of CommunityCare, and have done so, without leave or license from CommunityCare and in violation of the terms of the Agreement between MemberHealth and CommunityCare, under the confusingly similar and

deceptive term or name, "Community Care Rx," in order to falsely designate the origin of Defendants' services, in violation of 15 U.S.C. § 1125(a). These acts by Defendants are likely to cause confusion, mistake, and/or deception among consumers in Oklahoma. Defendants have provided, advertised, offered for sale, sold and/or dealt in these products or services in this judicial District, and in the State of Oklahoma.

42. Defendants have represented to consumers of their products and services, through use of a confusingly similar and deceptive term or name, that they are selling the products and services of CommunityCare or are under CommunityCare's control and authority. These representations are false and misleading, and known by Defendants to be false and misleading.

43. As a result of Defendants' actions, CommunityCare has sustained and will continue to sustain the dilution of valuable goodwill and reputation established in connection with the use and promotion of the "CommunityCare" mark in Oklahoma, causing loss of profits; Defendants have benefited from the improper association of their products or services with CommunityCare; Defendants' offering of products or services of inferior quality under a confusingly similar and deceptive term or name interferes with the incentives CommunityCare has to provide its high-quality products and services to Oklahoma consumers; and members of the public have been and are likely to continue to be confused, misled, and deceived.

44. Defendants' actions have been willful and wanton, or in reckless disregard of the both the rights of CommunityCare in its "CommunityCare" mark and Defendants' obligations under the Settlement Agreement. Unless preliminarily and permanently restrained and enjoined, including by temporary restraint, Defendants are likely to continue to engage in infringing acts, causing CommunityCare irreparable damage.

## THIRD CLAIM FOR RELIEF

### Unfair Competition Under the Common Law

45. Defendants' conduct alleged above constitutes unfair competition in violation of CommunityCare's rights under the common law of Oklahoma.

46. These wrongful acts have proximately caused and will continue to cause CommunityCare substantial injury, including loss of customers and business partners, dilution of its goodwill, confusion of existing and potential customers and business partners, injury to its reputation, and diminution of the value of its products and services. The harm these wrongful acts will cause CommunityCare is irreparable, and the amount of damage sustained by CommunityCare will be difficult to ascertain if these acts continue. CommunityCare has no adequate remedy at law. CommunityCare is therefore entitled to preliminary and permanent injunctive relief, including immediate relief by means of temporary restraint.

47. CommunityCare is entitled to its actual damages resulting from Defendants' conduct alleged above, as well as to punitive damages therefor.

## FOURTH CLAIM FOR RELIEF

### Deceptive Trade Practices and Passing Off Under State Law (78 Okla. Stat. §§ 51 *et seq.* and the common law)

48. Defendants' wrongful acts alleged above constitute deceptive trade practices and passing off in violation of Oklahoma statutes, 78 Okla. Stat. §§ 51 *et seq.* and the common law.

49. Defendants' activities in, *inter alia*, passing off its "Community Care Rx" name as CommunityCare's "CommunityCare" mark seek to deceive consumers that Defendants' products and services emanate from CommunityCare, all to CommunityCare's detriment, and will continue to damage CommunityCare unless enjoined by the Court.

50. These wrongful acts have proximately caused and will continue to cause CommunityCare substantial injury, including loss of customers and business partners, dilution of its goodwill, confusion of existing and potential customers and business partners, injury to its reputation, and diminution of the value of its products and services.

51. Pursuant to 78 Okla. Stat. § 54(A), CommunityCare is entitled to preliminary and permanent injunctive relief, including immediate relief by means of temporary restraint, preventing Defendants, along with their officers, directors, agents, servants, employees, representatives, attorneys, related companies, successors, assigns, and all others in active concert or participation with them, from engaging in further such unlawful conduct.

52. Pursuant to 78 Okla. Stat. § 54(A) and (C), CommunityCare is entitled to its actual damages resulting from Defendants' conduct alleged above, and to an award of attorney's fees.

**FIFTH CLAIM FOR RELIEF**

**Breach of Contract Under the Common Law**

53. CommunityCare and MemberHealth formed the Settlement Agreement described above, which they mutually executed in writing on November 17, 2005.

54. CommunityCare has performed all of its promises under the Agreement.

55. Through the fault of MemberHealth, and as a result of Defendants' wrongful acts and MemberHealth's multiple failures to perform its promises under the Agreement, as set forth above, MemberHealth has breached the Agreement.

56. As a direct result of MemberHealth's breach, CommunityCare has suffered damages, and the consideration for CommunityCare's obligations under the Agreement has failed in whole or in part, entitling CommunityCare to its election of damages or recission.

## SIXTH CLAIM FOR RELIEF

### Order Requiring the Patent and Trademark Office to Refuse or Cancel Registration of the "Community Care Rx" Mark

57. On February 5, 2004 and October 5, 2005, NCPA filed intent-to-use Applications Nos. 78-363299 and 78-726708, respectively, with the federal Patent and Trademark Office (the "PTO") to register the word mark "Community Care Rx" on the principal register in connection with marketing discount Medicare card services, administrating a Medicare program for goods and services, healthcare benefit and prescription drug plans, medical services, and related activities.

58. NCPA's Applications Nos. 78-363299 and 78-726708 are pending at the PTO at the time of the filing of this Complaint.

59. At the time NCPA filed these intent-to-use applications, neither NCPA nor any of Defendants had used the mark "Community Care Rx" in commerce, either nationally or in Oklahoma, specifically.

60. Beginning in 1993 and up to the present, CommunityCare has continuously used the name and trademark "CommunityCare" in connection with its products and services in the insurance market, including healthcare benefit and prescription drug plans. CommunityCare is therefore the senior user of the "CommunityCare" mark in relation to NCPA and the other Defendants.

61. Apart from acquired distinctiveness, which Defendants cannot claim for the name "Community Care Rx," the words "Community Care" as well as the abbreviation "Rx" (which NCPA has disclaimed on its PTO applications) are descriptive and therefore incapable of protection as a distinctive mark.

62. In light of the foregoing, NCPA is not entitled to registration of the mark "Community Care Rx," and CommunityCare therefore requests that the Court, upon rescinding the Agreement, issue an Order to the PTO requiring that it refuse registration of the mark "Community Care Rx" if NCPA's Applications Nos. 78-363299 and 78-726708 are still pending, or, in the event that either or both of the registrations have been granted by the PTO to NCPA's "Community Care Rx" mark, that the Court issue an Order to the PTO requiring that it cancel such registrations.

**PRAYER FOR RELIEF**

63. CommunityCare requests judgment against Defendants as follows:

A. Actual damages, including Defendants' profits, in an amount to be proved at trial, including up to treble damages or profits, as provided by 15 U.S.C. § 1117;

B. Punitive damages pursuant to state law in an amount sufficient, taking into consideration the assets and net worth of Defendants, to render the consequences of Defendants' tortious conduct an example to themselves and others;

C. Injunction, both preliminary and permanent, including immediate relief by way of temporary restraint, against any further violations of CommunityCare's trademark rights and other rights;

D. An Order requiring Defendants to file with the Court and serve on CommunityCare within thirty (30) days after service on Defendants of such injunction, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

E. An Order requiring the Patent and Trademark Office to refuse or cancel registration of the mark "Community Care Rx" with respect to NCPA's Applications Nos. 78-363299 and 78-726708;

F. Declaratory relief, as described above;

G. Equitable disgorgement of all Defendants' ill-gotten gains;

H. Rescission or specific performance of the Settlement Agreement between MemberHealth and CommunityCare, or other contract remedies as appropriate;

I. An award of all costs of bringing and prosecuting this action, including reasonable attorney's fees; and

J. Any other relief, either legal or equitable, to which the Court may determine CommunityCare is entitled.

DOERNER, SAUNDERS, DANIEL & ANDERSON, L.L.P.

By: ______________________________
Tom Q. Ferguson, OBA No. 12288
Robert Spoo, OBA No. 19709
320 South Boston Avenue, Suite 500
Tulsa, Oklahoma 74103-3725
Telephone (918) 582-1211
Facsimile (918) 591-5360

Attorneys for Plaintiff, CommunityCare HMO, Inc.

348439.1

# SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "Agreement"), entered into as of November 17th, 2005, between CommunityCare HMO, Inc., an Oklahoma corporation with a principal place of business in Tulsa, Oklahoma (hereinafter "CCHMO") and MemberHealth, Inc., an Ohio corporation with a principal place of business in Solon, Ohio (hereinafter "MemberHealth");

## WITNESSETH

WHEREAS on November 4, 2005, CCHMO filed a verified petition in the District Court of Tulsa County, Case No. CJ 2005-06555 against MemberHealth alleging that MemberHealth's use of the trademark "COMMUNITY CARE RX" constitutes trademark infringement and unfair competition;

WHEREAS, MemberHealth removed the action to the United States District Court for the Northern District of Oklahoma, Case No. 05-CV-630 TCK-FHM on November 8, 2005;

WHEREAS, CCHMO filed for a temporary restraining order and temporary injunctive relief with the United States District Court for the Northern District of Oklahoma;

WHEREAS, the parties hereto desire to settle and terminate all claims and disputes between them in order to avoid the expense and uncertainty of continued litigation, and wish for the United States District Court for the Northern District Court of Oklahoma to enter the Notice of Dismissal attached hereto as Exhibit A; and

NOW, THEREFORE, in consideration of the foregoing and of the following promises and conditions, the parties hereto mutually agree as follows:

1. MemberHealth agrees to immediately instruct its enrollers to implement the following actions in Oklahoma:

   (a) MemberHealth enrollers will ask each consumer, at the beginning of any contact, if they are currently enrolled in any hospital, medical, or managed care plan, and if so, what plan;

   (b) If the consumer identifies CommunityCare HMO or CommunityCare Life and Health Insurance Company, then the following statement will be made to the consumer:

   > "Community Care Rx is a plan associated with MemberHealth, Inc. MemberHealth is headquartered in Ohio and is not associated in any way with the CommunityCare Managed Healthcare Plans of Oklahoma or any of its subsidiaries, headquartered in Tulsa, Oklahoma."

   (c) The MemberHealth enroller will point the consumer to the second page of the

EXHIBIT A

MemberHealth enrollment form where it sets forth what will happen if the consumer is currently enrolled in an MA Plan.

(d) If CCHMO learns of any violations of Paragraph 1, CCHMO will promptly notify MemberHealth and MemberHealth will take prompt action to ensure compliance by the enroller with the procedures of this paragraph 1.

2. Not later than December 1, 2005, MemberHealth shall request approval from the Center for Medicare and Medicaid Services ("CMS") to modify its Oklahoma marketing materials. Not later than 30 business days after CMS approval is obtained MemberHealth will implement the revised marketing materials. In the event that CMS does not approve the marketing materials, then MemberHealth will promptly resubmit materials that are acceptable to MemberHealth, CCHMO, and CMS.

3. Not later than 30 business days after CMS approval is obtained, MemberHealth will change the name of its Oklahoma Medicare Part D "Community Care Rx" plan to "Community Pharmacists Care Rx", and CCHMO agrees that the trademark "Community Pharmacists Care Rx" is not confusingly similar to CCHMO's "CommunityCare" trademark. Upon the change in the Medicare Part D plan name, nothing in this Agreement shall prevent MemberHealth from orally informing customers to whom it previously marketed its Community Care Rx plan that the "Community Care Rx" plan is now known as "Community Pharmacists Care Rx", and that other than the change in name the "Community Pharmacists Care Rx" plan is identical to the "Community Care Rx" plan.

4. The restrictions of paragraph 3 shall apply only for so long as CCHMO is using Community Care in the Oklahoma market.

5. The parties agree to take such action as may be necessary to avoid confusion between MemberHealth and CCHMO.

6. The parties agree to cooperate to obtain expedited approval from CMS for modification of MemberHealth's Oklahoma marketing materials.

7. CCHMO agrees not to oppose, challenge, or petition against the use or registration, in any country, in any trademark office, court, administrative or other government body other than in the State of Oklahoma, of the COMMUNITY CARE RX mark, or petition to cancel any application, registration, or re-registration of the COMMUNITY CARE RX mark by MemberHealth, the National Community Pharmacists Association or the National Community Pharmacists Association's affiliated entities. MemberHealth agrees not to oppose, challenge, or petition against the use or registration, in Oklahoma of the COMMUNITY CARE mark or petition to cancel any application, registration, or re-registration of the COMMUNITY CARE mark in Oklahoma by CCHMO.

8. CCHMO, for itself and its successors, trustees, representatives, employees, directors and assigns, does hereby release, acquit and forever discharge MemberHealth, its agents, servants, employees, successors, directors, trustees, representatives and assigns, all and

singular, as released parties, of and from any and all actions, causes of action, claims and demands of any nature asserted or which might have been asserted in Case No. 05-CV-630 TCK-FHM; provided however, that this release and discharge shall not affect any rights or obligations arising pursuant to this Agreement.

9. MemberHealth, for itself and its successors, trustees, representatives, employees, directors and assigns, does hereby release, acquit and forever discharge CCHMO, its agents, servants, employees, successors, directors, trustees, representatives and assigns, all and singular, as released parties, of and from any and all actions, causes of action, claims and demands of any nature asserted or which might have been asserted in Case No. 05-CV-630 TCK-FHM; provided however, that this release and discharge shall not affect any rights or obligations arising pursuant to this Agreement.

10. This Agreement shall be binding upon all subsidiaries, related companies, affiliates and officers and directors of MemberHealth and CCHMO, as well as their assigns and successors in interest.

11. CCHMO shall file, within two days of execution of this Agreement, the form of Notice of Dismissal attached hereto as Exhibit A. The terms of the Notice of Dismissal shall be incorporated into this Settlement Agreement by reference.

12. This agreement is made without admission of wrongdoing or liability by MemberHealth.

13. This Agreement may be executed in multiple counterparts, each of which shall be fully effective as an original, but which together shall constitute only one instrument.

14. This instrument contains the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes and cancels all previous written or oral understandings, agreements, negotiations, commitments and any other writings or communications with respect to such subject matter.

WHEREFORE, the parties hereby acknowledge their agreement and consent to the terms and conditions set forth above through their respective signatures contained below:

**COMMUNITYCARE HMO, INC.**

By: [signature]
Name: RICHARD TODD
Title: President & CEO
Date: November 17, 2005

**MEMBERHEALTH, INC.**

By: [signature]
Name: Charles E. Hallberg
Title: President
Date: 11/17/2005

VERIFICATION

STATE OF OKLAHOMA )
) ss.
COUNTY OF TULSA )

Richard Todd, of lawful age, being first duly sworn upon oath, deposes and states that he has read the above and foregoing Verified Complaint, that he is familiar with the contents thereof, and that the facts therein set forth are true and correct to the best of his knowledge and belief.

Richard Todd

Subscribed and sworn to before me this 5th day of April, 2006.

Notary Public
Commission Number__________________

My Commission Expires:

__________________

Notary Public Oklahoma
OFFICIAL SEAL
Angela Tipton
Tulsa County
00010564 Exp. 8-3-08